OPINION
{¶ 1} Jesse D. Cull appeals from the decision of the Ashtabula County Court, Eastern District, which denied his motion to suppress blood-alcohol test results. We reverse.
 {¶ 2} At approximately 2:17 a.m., December 7, 2003, Trooper Scott Balcomb of the Ohio State Highway Patrol responded to a report of a single-car accident on State Route 7 at North Ayers Road in Andover Township. A vehicle operated by Cull had traveled off the road and sheared a utility pole. The vehicle flipped over after hitting the utility pole and came to a rest, lying on its roof. Trooper Balcomb saw emergency personnel remove Cull from the vehicle and place him in an ambulance. Trooper Balcomb spoke with Cull briefly and determined alcohol may have played a part in causing the accident.
 {¶ 3} Cull was taken to St. Joseph's Family Medical Center in Andover, and then life-flighted to St. Elizabeth Health Center in Youngstown. There, emergency room personnel took a blood sample from Cull. Upon Trooper Balcomb's written request, the hospital released a certified copy of Cull's toxicology report to the State Patrol.
 {¶ 4} Cull was charged with driving under the influence of alcohol, in violation of R.C. 4511.19(A)(1) and former 4511.19(A)(6) (now 4511.19(A)(1)(f)), operating a vehicle without a valid license, in violation of R.C. 4507.02(A)(1), and operating a vehicle without reasonable control, in violation of R.C. 4511.202(A).
 {¶ 5} On April 20, 2004, Cull moved to suppress all hospital emergency room medical records because, "the State has failed to follow and adhere to the requirements of the Ohio Administrative Code, Section 3701-5301, et seq." A hearing on Cull's motion was held on June 28, 2004. The only witness to testify for the state at the hearing was Trooper Balcomb. The state did not introduce any evidence relative to the procedures by which Cull's blood was taken. The trial court denied the motion to suppress on February 10, 2005.
 {¶ 6} Thereafter, Cull pleaded no contest to the charge of driving under the influence and the trial court sentenced Cull to serve 180 days in jail, 170 days suspended, and 60 days electronically monitored house arrest, suspended Cull's license for 540 days, ordered Cull to pay a fine of $500, and imposed two years of supervised probation. Cull timely appealed and execution of his sentence has been stayed pending appeal.
 {¶ 7} On appeal, Cull raises the following assignment of error: "The Trial Court erred to the prejudice of the Appellant in denying his Motion to Suppress, i.e., failure to prove use of a sterile needle; failure to prove who could withdraw blood; and the result of the blood alcohol test, when administered by hospital personnel at St. Elizabeth Health Center beyond the two (2) hour testing time, all of the above as mandated by Ohio Administrative Code, Section 3701-53-01, et seq., and by failing to comport with the admonitions of State v. McKivigan,
1989 WL 6111 (Ohio App. 11 Dist.)."
 {¶ 8} "At a suppression hearing, the trial court acts as the trier of fact." State v. Hines, 11th Dist. No. 2004-L-066,2005-Ohio-4208, at ¶ 14 (citations omitted). "[T]he trial court is best able to decide facts and evaluate the credibility of witnesses. Its findings of fact are to be accepted if they are supported by competent, credible evidence." State v. Mayl,106 Ohio St.3d 207, 2005-Ohio-4629, at ¶ 41. "Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts." Hines, 2005-Ohio-4208, at ¶ 14 (citations omitted); Mayl, 2005-Ohio-4629, at ¶ 41 ("we are to independently determine whether [the trial court's factual findings] satisfy the applicable legal standard") (citation omitted).
 {¶ 9} In the course of a criminal investigation for driving under the influence of alcohol, police officers may submit a written statement to health care providers "request[ing] the provider to supply to the officer copies of any records the provider possesses that pertain to any test or the results of any test administered to the specified person to determine the presence or concentration of alcohol * * * in the person's blood, breath, or urine at any time relevant to the criminal offense in question." R.C. 2317.02(B)(2)(a). "If a health care provider possesses any records * * * regarding the person in question at any time relevant to the criminal offense in question, in lieu of personally testifying as to the results of the test in question, the custodian of the records may submit a certified copy of the records, and, upon its submission, the certified copy is qualified as authentic evidence and may be admitted as evidence in accordance with the Rules of Evidence." R.C. 2317.02(B)(2)(b).
 {¶ 10} At the suppression hearing, Trooper Balcomb testified he obtained certified copies of Cull's medical records from St. Elizabeth Health Center through a written request made pursuant to R.C. 2317.02. The trial court upheld the admission of these records based on Trooper Balcomb's compliance with the relevant statute.
 {¶ 11} Cull argues that the records were inadmissible under R.C. 4511.19(D)(1). This section provides that "the court may admit evidence on [sic] the concentration of alcohol * * * in the defendant's * * * blood * * * or other bodily substance * * * as shown by chemical analysis of the substance withdrawn within two hours of the time of the alleged violation." R.C. 4511.19(D)(1). "The bodily substance withdrawn shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code." Id. R.C. 3701.143
authorizes the director of health to "determine * * * techniques or methods for chemically analyzing a person's blood * * * in order to ascertain the amount of alcohol * * * in the person's blood" and to "issue permits to qualified persons authorizing them to perform such analyses."
 {¶ 12} The procedures for collecting samples of blood and other bodily substances are contained in Ohio Admin. Code3701-53-05. The procedures for testing blood and other bodily substances are set forth in Ohio Admin. Code 3701-53-03(A). The required qualifications of laboratory personnel and the laboratory itself are set forth in Ohio Admin. Code 3701-53-07(A) and 3701-53-06(A) respectively.
 {¶ 13} When the results of a blood-alcohol test are duly challenged as not complying with the requirements of R.C.4511.19(D)(1) and the relevant sections of the Ohio Administrative Code, the prosecution bears the burden of laying a foundation for the admissibility of the test results at the suppression hearing. Mayl, 2005-Ohio-4629, at ¶ 42, citingState v. French, 72 Ohio St.3d 446, 452, 1995-Ohio-32.
 {¶ 14} Cull, citing this court's decision in State v.McKivigan (Jan. 27, 1989), 11th Dist. No. 1905, 1989 Ohio App. LEXIS 263, argues that the prosecution failed to introduce evidence of compliance with the testing procedures set forth in the Ohio Administrative Code, such as the use of a sterile needle for withdrawing the blood sample, Ohio Admin. Code3701-53-05(C).[1]
 {¶ 15} The prosecution cites to State v. Brand,157 Ohio App.3d 451, 2004-Ohio-1490, for the proposition that, when "blood [i]s drawn by medical personnel and not at the request of a law enforcement officer, the requirements of R.C. 4511.19(D) did not apply at all." Id. at ¶ 23. Since Cull's blood was drawn by emergency room personnel at St. Elizabeth Hospital and not at the request of Trooper Balcomb, the prosecution did not have to prove compliance with R.C. 4511.19(D)(1) or the Ohio Administrative Code.
 {¶ 16} Subsequent to the filing of this appeal, the Ohio Supreme Court addressed this issue and settled it in Cull's favor. In Mayl, the court held as follows:
 {¶ 17} "When a blood-alcohol test is not requested by law enforcement but is administered in connection with medical treatment by qualified medical personnel and analyzed in an accredited laboratory, the state must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Admin. Code Chapter 3701-53 before the test results are admissible in a prosecution depending upon proof of an R.C. 4511.19(A) violation." 2005-Ohio-4629, at paragraph two of the syllabus.
 {¶ 18} In the present case, the prosecution introduced no evidence of substantial compliance with the requirements of Ohio Admin. Code Chapter 3701-53. The results of Cull's blood-alcohol test should have been suppressed. Cull's sole assignment of error has merit.
 {¶ 19} For the foregoing reasons, the judgment of the Ashtabula County Court, Eastern Division, denying Cull's motion to suppress is reversed and this matter is remanded for proceedings consistent with this opinion.
O'Toole, J., concurs, Grendell, J., dissents with a Dissenting Opinion.
[1] Cull also claims the prosecution failed to introduce evidence that the blood sample was collected within two hours of the violation as required by R.C. 4511.19(D)(1). We note that the prosecution did introduce evidence tending to show that Cull's blood was drawn within two hours of the violation. However, since the issue of when the blood was drawn is not dispositive of the appeal, we do not address it.